THEODORA VARELIS *et al.*, Plaintiffs-Appellants, v. NORTHWESTERN MEMORIAL HOSPITAL, Defendant-Appellee.

First District (1st Division)   No. 1—92—1888

Opinion filed August 29, 1994.

Law Offices of Tom Leahy, of Chicago, for appellants.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, and C. Barry Montgomery, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs Theodora and James Varelis brought a wrongful death action against defendant Northwestern Memorial Hospital after Theodora and Spiros Varelis had already recovered a $2,821,934 judgment against defendant for personal injuries and loss of consortium arising from the same medical negligence which is alleged to have caused the death of Spiros. On cross-motions for summary judgment, the circuit court entered judgment in favor of defendant, finding that plaintiffs' wrongful death action could not be properly maintained after the entry of judgment and satisfaction of that judgment in decedent's personal injury action. Following the

circuit court's denial of their motion for reconsideration, plaintiffs filed this appeal requesting reversal of the summary judgment order entered in favor of defendant and that we enter summary judgment in their favor.

Spiros and Theodora's initial lawsuit against defendant was a medical negligence action for personal injuries and loss of consortium arising from a magnesium sulfate overdose which was administered to Spiros on July 5, 1987, while in defendant hospital. After the closing arguments in that lawsuit, the circuit court instructed the jury to award Theodora damages for loss of consortium "for only such period of time that you find that her husband, SPIROS VARELIS, is likely to live." In accordance with the jury's verdict, the circuit court entered judgment in that case against defendant and in favor of Theodora and Spiros in the amount of $2,248,434 for personal injury damages and $573,500 for loss of consortium damages. On March 14, 1989, Theodora and Spiros filed a post-trial motion seeking to set aside the jury's verdict pertaining to Spiros' damages and grant him a new trial on that issue. Defendant filed its answer to the motion. Spiros, however, died on May 7, 1989, while the motion was pending.

Satisfactions of judgment for the initial lawsuit were executed by a representative of Spiros' estate and by Theodora acknowledging the acceptance of payment of the judgment. The satisfactions included the following language:

"In releasing the judgment of December 14, 1988, plaintiff reserves all rights, if any, to pursue a wrongful death claim, which rights defendant denies that plaintiff has."

An agreed order to withdraw the post-trial motion was entered on July 18, 1989.

On July 3, 1989, plaintiffs filed the wrongful death action which is the subject of this appeal. Defendant responded to the suit by filing a motion to dismiss, arguing that since judgment was entered and satisfied in the personal injury action against defendant, Spiros' dependents are barred from prosecuting any wrongful death action against it. The motion was briefed and argued by both parties. On May 17, 1990, Judge Sodaro denied defendant's motion to dismiss. Thereafter, defendant filed a motion for reconsideration of the dismissal order. Judge Sodaro also denied that motion. Defendant then moved that the circuit court certify the question under Supreme Court Rule 308 (134 Ill. 2d R. 308). On April 9, 1990, the circuit court found that such certification was unwarranted and denied defendant's motion.

Subsequently, defendant filed a motion for summary judgment.

Plaintiffs responded by filing a cross-motion for summary judgment allegedly attaching Spiros' death certificate and an affidavit from Dr. Harvey Golomb, chief of hematology at the University of Chicago, which stated that the magnesium overdose was a proximate cause of Spiros' death and citing Judge O'Connell's order for summary judgment in favor of Spiros and Theodora in the personal injury action. Judge Sodaro's successor, Judge Casciato, granted defendant's summary judgment motion and denied plaintiffs' cross-motion, commenting that plaintiffs had failed to file an affidavit establishing the cause of death. Now, plaintiffs appeal the above orders, requesting that we reverse the order entered in favor of defendant, enter summary judgment in their favor and remand this cause to the circuit court for a trial limited to the issue of damages.

Defendant argues on appeal that the circuit court properly entered summary judgment in its favor. Specifically, defendant argues that the language of the Illinois Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, par. 1 *et seq.*) bars plaintiffs' cause of action because there was recovery in a personal injury action for the same negligence alleged in the wrongful death action. The Wrongful Death Act states:

> "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." (Ill. Rev. Stat. 1987, ch. 70, par. 1.)

Defendant asserts that in accordance with the above statute, a release or accord and satisfaction by the injured party during his lifetime precludes a wrongful death action predicated on the same alleged negligence and injury. This reasoning incorrectly equates a personal injury action with a wrongful death action.

■ A personal injury action is more appropriately equated with a survival action. A survival action is brought after the death of an injured person by a representative of his estate in order to adjudicate those statutory and/or common law actions which had already accrued to the *decedent* prior to his death. (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919.) In other words, a survival action allows for recovery of damages for injury sustained by the *decedent* up to the time of death. (*Wyness v. Arm-*

*strong World Industries, Inc.* (1989), 131 Ill. 2d 403, 546 N.E.2d 568.) In contrast, a wrongful death action allows the decedent's *next of kin* to recover damages for their loss based on the wrongful actions of another which were committed against the decedent. (*Wyness*, 131 Ill. 2d 403, 546 N.E.2d 568.) Thus, a wrongful death action's damages do not accrue until after the death of the injured person and addresses the injury suffered by the next of kin due to the loss of the decedent, as opposed to the damages in a survival action which accrue during the decedent's lifetime and address the injuries personally suffered by the decedent prior to death. (*Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583.) Hence, the precipitating "injury" for plaintiffs in a wrongful death action, unlike the injury in a personal injury action, is death. *Wyness*, 131 Ill. 2d 403, 546 N.E.2d 568.

■ Defendant cites cases in which courts have barred wrongful death actions initiated subsequent to resolved personal injury claims. These cases are readily distinguishable. For example, in *Little v. Blue Goose Motor Coach Co.* (1931), 346 Ill. 266, 178 N.E. 496, the plaintiff was involved in a car accident, found liable and had damages assessed against him. Later, the plaintiff filed suit against Blue Goose. After the plaintiff's death, his executrix was substituted in the case. The court found that the liability issue had already been decided in Blue Goose's favor during the decedent's lifetime and, therefore, held that a wrongful death action was barred by estoppel by verdict. In other words, unlike the instant case, a court had already determined that the defendant was not responsible for plaintiff's injuries.

Defendant also cited *Fountas v. Breed* (1983), 118 Ill. App. 3d 669, 455 N.E.2d 200, in support of its argument. *Fountas*, however, supports plaintiff's position. In *Fountas*, plaintiff filed a malpractice action against defendants. After plaintiff's death, the action was dismissed with prejudice and such dismissal operated as an adjudication on the merits. Subsequently, plaintiff's administrator filed an action seeking recovery under the Wrongful Death Act and for funeral and medical expenses. The *Fountas* court *did not* find that the wrongful death action was barred by the previous dismissal of the malpractice action. In fact, the *Fountas* court held that the two claims were separate causes of action. Accordingly, under the doctrine of *res judicata*, the court only barred recovery of plaintiff's medical expenses in the wrongful death action because the identical claim for medical expenses had been pleaded in the malpractice suit.

Other cases cited by defendant in support of its argument deal with affirmative defenses raised by the defendants. In *Lambert v. Village of Summit* (1982), 104 Ill. App. 3d 1034, 433 N.E.2d 1016, the

appellate court held that the expiration during decedent's lifetime of the statute of limitations on a personal injury action defeated the wrongful death action filed by decedent's widow because such action was based on the same alleged negligence which gave rise to the personal injury action. In *Mooney v. City of Chicago* (1909), 239 Ill. 414, 88 N.E. 194, the decedent had executed a release from all liability in favor of the defendant. In *Biddy v. Blue Bird Air Service* (1940), 374 Ill. 506, 30 N.E.2d 14, the common law action was barred because of a Michigan workers' compensation immunity statute. Defendant also cites cases from other jurisdictions which are not persuasive. Accordingly, we disagree with defendant's argument and find that Spiros' personal injury cause of action was separate and distinct from plaintiffs' wrongful death cause of action.

Defendant further attempts to justify the summary judgment order by arguing that plaintiffs' wrongful death action was merged into the personal injury action. Defendant relies solely on *Tunnell v. Edwardsville Intelligencer, Inc.* (1968), 99 Ill. App. 2d 1, 241 N.E.2d 28, *rev'd on other grounds* (1969), 43 Ill. 2d 239, 252 N.E.2d 538, to support this argument. In *Tunnell*, the plaintiff sued for defamation and a jury returned a verdict of $35,000 for punitive damages, but did not award any compensatory damages. The circuit court, however, granted the defendant's motion for directed verdict and entered judgment in favor of the defendant and against the plaintiff. Then, the plaintiff's post-trial motion was denied. Thereafter, the plaintiff appealed. While the appeal was pending, the plaintiff died. There was a motion to substitute the estate as the plaintiff and to withdraw the portion of the appeal which sought a new trial. The defendant filed objections to the above motions, contending that the action had abated upon the death of the plaintiff. In relevant portion, the appellate court found that the plaintiff's cause of action for defamation merged into the judgment and, therefore, a plaintiff could appeal a defamation judgment which had been entered prior to the injured party's death. *Tunnell*, 99 Ill. App. 2d at 4-5, 241 N.E.2d at 29-30.

The holding in *Tunnell* has no effect on the circumstances of the case at bar. There is no rationale in *Tunnell* which suggests that a judgment entered in a personal injury action in any way "merges" or "abates" a subsequent wrongful death action by a decedent's next of kin. Defendant incorrectly analogizes a defamation action with a wrongful death action. A cause of action for defamation is purely personal to the injured party, and when a verdict has not been returned prior to the death of the injured party, the action legally abates at his death. (*Chiagouris v. Jovan* (1963), 43 Ill. App. 2d 220, 193 N.E.2d 205.) Conversely, a wrongful death action cannot be

brought until there is a death. A wrongful death action, therefore, is not merged or abated by a personal injury action for damages prior to death; thus, defendant's argument fails.

Defendant's final argument in support of the summary judgment order in its favor is that to allow plaintiffs to maintain a wrongful death action would be fundamentally unfair because it has already paid Theodora monies to compensate her for loss of consortium and services. Defendant fears that Theodora will be allowed to receive "double recovery" if a wrongful death action is allowed. The potential for double liability can be eliminated by defendant using the affirmative defense of collateral estoppel if plaintiffs seek damages which have already been litigated in the personal injury action. See *Sea-Land Services, Inc. v. Gaudet* (1974), 414 U.S. 573, 592, 39 L. Ed. 2d 9, 25, 94 S. Ct. 806, 818.

Since a wrongful death action is a separate and distinct cause of action from a personal injury action, and no merger or abatement applies to the instant case and the potential for double liability can be prevented, we reverse the circuit court's order of summary judgment in favor of defendant.

Plaintiffs also pray that we enter summary judgment in their favor. In relation to the above prayer, defendant requests that Dr. Golomb's affidavit and decedent's death certificate be stricken from the record on appeal. A review of the record indicates that the affidavit and the death certificate, although mentioned several times by plaintiffs' attorney during argument, were not filed until May 22, 1992, some two months after the summary judgment order was entered. Therefore, we strike those documents from the record on appeal and affirm the circuit court's denial of plaintiffs' motion for summary judgment.

For the foregoing reasons, we reverse the circuit court's order granting summary judgment in favor of defendant, affirm the order denying summary judgment in favor of plaintiffs and remand this cause for further proceedings in accordance with this opinion.

Affirmed in part; reversed in part and remanded.

CAMPBELL, P.J., and O'CONNOR, J., concur.